TREANOR *v.* MANHATTAN RY. CO.

(*City Court of New York, General Term.* May 4, 1891.)

NEGLIGENCE—WHAT CONSTITUTES.

Shoveling accumulated refuse from elevated drip-pans into carts standing on the street below, so as to fall upon passers-by, is such negligence as will justify a verdict for damages caused thereby.

Appeal from trial term.

Action by Susan Treanor against the Manhattan Railway Company. Defendant appeals from a judgment for plaintiff entered on the verdict of a jury.

Argued before VAN WYCK and NEWBURGHER, JJ.

*Davies & Rapallo*, for appellant. *Charles D. Ridgway*, for respondent.

VAN WYCK, J. This action was brought by a lady for damages for personal injuries caused by the carelessness with which the accumulated refuse of a drip-pan of the elevated railroad was being removed from it into a cart standing on the street below. These drip-pans are long, shallow sheet-iron pans, about five feet wide, attached to and under the superstructure of the elevated railroads, reaching across the avenues, and hanging directly over the

crossings laid for and used by foot passengers. The construction of these pans was in obedience to a public demand for the protection of persons and their wearing apparel, especially the costly apparel of ladies, from the dripping of oil from the engines, as well as from the falling of small articles and broken parts of machinery and structural iron. The method adopted by the elevated railroad of removing from these drip-pans the accumulated refuse is, first, to have two men shovel it into a heap on one side of the pan, and then to have them, one on either side of the heap, shovel it into a cart standing on the street about 14 feet below. The evidence in this case was that, while these men were so shoveling the refuse from the pan into the cart below, a fireman, ever alert, saw, falling with the dust, dirt, and refuse, an empty sodawater bottle, which first struck the tail-board of the cart, and then, rebounding, struck this lady upon the side of her head; that she threw up her hands and screamed, and was caught by him, and led from the avenue crossing to the sidewalk. It was also in evidence that she was severely injured, and was confined to her bed for four weeks. Chief Justice EHRLICH, sitting at trial term, submitted this evidence to the jury, with instructions that it was for the jury to determine whether or not the injuries, if any, sustained by this lady, were caused by the negligence of these two men, or the cartman, all of whom were the servants of the company; and it is against this ruling which the company, through able counsel, now makes complaint, contending that it was incumbent upon the plaintiff to show the occurrence of prior accidents similar to this one, in order to establish negligence in doing business in a method not obviously and notoriously dangerous, and claiming that the method adopted by them for removing this refuse was the best that could be adopted, and had long been in successful operation, and that plaintiff has not proven that any accident had heretofore happened from its operation. To sustain this contention and claim the defendant relies mainly upon the rulings in *Lafflin v. Railroad Co.*, 106 N. Y. 137, 12 N. E. Rep. 599, and quotes freely from the opinion of Judge EARL, writing for reversal of a judgment in favor of a lady who sued for damages for injuries sustained by her while stepping from a car to the station platform; and in which case her only complaint was that the platform was too far from the car, the space between them being about two feet, and in which she made no claim that human force had contributed to the proximate cause of the accident; but her complaint was directed against the very nature of the inanimate proximate cause of her injuries, and not against its present bad condition, or its improper original construction; and in that case the court rightly held that she could not recover, as the evidence showed that the platform had been properly constructed; that the space between it and the car was no greater than required by the exigencies of the business and operations of the railroad; that it had been used for many years; that thousands of men, women, and children had passed from it to the cars without injury; and that she had offered no evidence to assail either its original or present condition, but relied wholly upon the nature of its construction, as relating to its proximity to the cars. How different the case now under consideration, for here no complaint is made against the nature, construction, or condition, present or past, of the drip-pans; but plaintiff has directed her efforts at the proximate human cause of her injuries, the carelessness of the company's servants in so removing the refuse as to shovel an empty bottle, not into the cart, but on its tailboard, and from which it rebounded to plaintiff's head. Suppose the *Lafflin Case* had been presented to the court of appeals under these conditions; that the lady, while stepping from the car to the platform, had been struck upon the head with the brass nozzle of a rubber hose falling from the hands of a porter, who was on the top filling the water-tanks of his cars. What consideration then would have been given to argument of counsel that, as the company had adopted the best method of filling the water-tanks of its cars, the in-

jured person must first affirmatively show that some poor unfortunate had previously met with a similar accident, and that, until this had been done, the company's porters could go on dropping rubber hose and brass nozzles down upon the heads of retreating passengers *ad libitum?* Instead of relaxing the established rules of law, which hold parties to a strict responsibility for the negligence of their servants, it is absolutely necessary to hold the elevated railroads to a strict responsibility as regards the construction, maintenance, and careful management of these drip-pans, in order that the hundreds of thousands of men, women, and children who are daily compelled to pass under their structure, which is nothing more than a continuous iron bridge, may be secured from the annoyance of dripping oil and falling refuse, and from the danger of falling pieces of broken machinery and iron. There seems to be no merit in the other objections raised by the defendant on this appeal, and the plaintiff's recovery is not excessive. Therefore her judgment is affirmed, with costs.